IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> DWAYNE GLENN (2), <br><br> Defendant. | CRIMINAL ACTION FILE NO. <br><br> 1:17-CR-127-MHC-JKL-2 |

**FINAL REPORT AND RECOMMENDATION**

Defendant Dwayne Glenn is charged in this case with conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. [Doc. 31 (Second Superseding Indictment).] This case is before the Court on Glenn's Motion to Suppress Evidence, [Doc. 29], in which he moves to suppress (1) evidence of his identity that law enforcement obtained during a traffic stop on April 20, 2017, and (2) U.S. currency seized from his vehicle, a yellow Chevrolet Silverado truck, later that day after a canine alerted to the bed of his truck. An evidentiary hearing on the suppression motion was held before me on January 9, 2018. Transcript references are to the transcript of that

hearing (hereinafter "Tr."). [*See* Doc. 98.] Following the hearing, Glenn submitted a brief in support of his motion [Doc. 111] and the government has filed a response [Doc. 122]. For the reasons that follow, it is **RECOMMENDED** that the motion to suppress be **DENIED**.

**I.   Facts**

This case arises out of a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") drug trafficking investigation that initially involved controlled purchases of drugs from Anthony Lamar Lewis, a codefendant in this case. (Tr. 103-04.) Seeking to discover the source of Lewis's supply, agents tracked Lewis to Muffler City, a business located on Metropolitan Parkway in Atlanta. (Tr. 104.) Agents were unable to tell, however, whether Lewis was going into the Muffler City or some other area behind the business. On April 20, 2017, at around 12:45 p.m., ATF Task Force Officer Tyrone Dennis was detailed to the location and, posing in an undercover capacity as a Muffler City patron, he observed what appeared to be a separate business in a trailer in the area behind the Muffler City. (Tr. 53, 63, 104.) He also saw six or seven men near the trailer, exiting and entering it. (Tr. 59, 67.)

Around fifteen minutes later, Officer Dennis observed Louis drive into the area behind the Muffler City. (Tr. 57, 68.) Louis entered the trailer, exited, and

then left with a passenger. (Tr. 57, 67-68.) After Louis left, a yellow Chevrolet Silverado truck came to the location. (Tr. 65.) Officer Dennis saw a black male exit the truck and enter the trailer. Around five or six minutes later, the male exited the trailer, got into the truck, and left. (*Id.*)

Meanwhile, ATF Special Agent Alan McLeod arrested Louis, pursuant to a federal arrest warrant. (Tr. 90, 105, 113-14.) After being advised of his *Miranda* rights, Louis agreed to speak with SA McLeod. (Tr. 105.) Louis stated that his source was an individual whom he knew as "Wayne" and that "Wayne" drove a yellow Silverado. SA McLeod was in communication with Officer Dennis and ATF Special Agent Brian Williams, who were at the trailer and confirmed that a yellow Silverado truck was there (or had recently been there). (*Id.*) Agents also learned from Louis that the trailer had a large quantity of narcotics and at least one firearm, which Louis had observed earlier that day. (Tr. 106.)

At SA McLeod's request, Atlanta Police Department ("APD") officers stopped the yellow Silverado to identify the driver (later identified as Glenn). (Tr. 58, 105-07, 114-15.) Glenn provided his identification, and APD allowed him to leave because he did not have any outstanding warrants. (Tr. 107, 114-15.) After the stop, Glenn went to another location, and then drove back to the area behind

the Muffler City. (Tr. 59, 107, 115.) SA McLeod testified that he was concerned that Glenn had become aware that Louis had been arrested and that Glenn was returning to the location to destroy or dispose of evidence. (Tr. 107-08.) As a result, at around 3:45 p.m., law enforcement "froze the scene" pending the issuance of a search warrant for the trailer so that no one could enter or exit the trailer and to ensure that there was no one hiding in cars in the area. (Tr. 9-10, 108.) Several individuals at the scene, including Glenn, were detained at that point, and Glenn was placed in handcuffs. (Tr. 23-24.) SA McLeod also requested a K-9 unit. (Tr. 109.)

At 4:03 p.m., the undersigned Magistrate Judge issued a search warrant authorizing a search of the trailer. (Gov't Ex. 2 [Doc. 89-1 at 2].) The warrant described the property to be searched as follows:

> A beige single wide trailer with a brown handicap ramp located behind Muffler City 2263-B Metropolitan Parkway, SW, Atlanta, GA 30315 and the trailer is surrounded by a chain link fence marked F

(*Id.*) After the warrant was issued, agents executed the warrant. The K-9, Diesel, who was trained to detect crack cocaine, powder cocaine, and other narcotics, was deployed to conduct a sniff of the trailer, and he alerted to a bag containing narcotics and a firearm. (Tr. 36, 37, 109.) Following the search of the trailer,

Diesel was used to perform an open-air sniff on all the cars that were directly in front of the trailer. (Tr. 44, 109.) Diesel alerted to the rear of the yellow Silverado. (Tr. 35, 45-46, 109.) The truck bed was closed, but the tailgate was unlocked, so SA McLeod opened it for Diesel to show what he was alerting to. (Tr. 46, 110.) Diesel jumped in the bed of the truck and pawed vigorously, strewing currency in all directions. (Tr. 110, 124; Gov't Ex. 5B [Doc. 89-1 at 7].) Agents seized the currency as evidence of alleged drug trafficking.

## II.    Discussion

As noted above, Glenn moves to suppress evidence of his identity, which APD officers obtained during the traffic stop, and the currency that agents seized following the search of the Silverado. The Court addresses each of those incidents separately below.

### A.    The Traffic Stop of the Yellow Silverado Was Supported By Reasonable Suspicion that Glenn Was Engaged In Criminal Activity.

Challenging the constitutionality of the traffic stop, Glenn argues that "[n]o evidence of record supports the seizure of Glenn and his vehicle to obtain his identification" and, therefore, the traffic stop was unconstitutional and evidence of his identity should be suppressed. [Doc. 111 at 6-8.] The government responds that the traffic stop was lawful, as law enforcement had reasonable articulable

suspicion to conduct the traffic stop. [Doc. 122 at 5-7.] The government also argues that it would have inevitably discovered Glenn's identity because he returned to the location of the trailer and was detained while officers waited for the search warrant to be issued. [*Id.* at 7.] The government has the better argument.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "There are three broad categories of police-citizen encounters for purposes of [a] Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). Along these lines, law enforcement officers can conduct a brief investigatory seizure of a car and its occupant to investigate a "reasonable suspicion" he is engaging in criminal conduct. *See United States v. Williams*, 876 F.2d 1521, 1523-24 (11th Cir.1989); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."). A "reasonable suspicion" requires "specific and articulable facts

which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "Reasonable suspicion is determined from the totality of the circumstances, and from the collective knowledge of the officers involved in the stop." *Williams*, 876 F.2d at 1524 (citations omitted). The reasonable suspicion standard "is considerably less demanding than proof of wrongdoing by a preponderance of the evidence and less than probable cause"; however, the Fourth Amendment requires that law enforcement "articulate facts which provide some minimal, objective justification for the stop." *Id.*

Considering the totality of the circumstances, it was objectively reasonable for agents to believe that Glenn was involved in criminal conduct. On April 20, 2017, after having conducted a series of controlled drug purchases with Louis, including one earlier that day, agents saw Louis travel to a trailer located behind the Muffler City. (Tr. 51-52, 57, 104-05.) After Louis was arrested pursuant to an arrest warrant, he admitted that he obtained cocaine from a source behind Muffler City who went by the name of "Wayne" and drove a yellow Silverado. (Tr. 105.) Contemporaneously with the Louis's interview, officers conducting surveillance of the Muffler City location advised that they observed a yellow Silverado present at

the location, and during the interview it left the premises. (*Id.*) Viewing these circumstances in toto, the Court readily concludes that law enforcement had articulable suspicion that the driver of the Silverado was engaged in drug trafficking and thus had a reasonable basis to stop the vehicle to identity the driver.[1]

### B. The Search of the Yellow Silverado Was Permissible Under the Automobile Exception to the Warrant Requirement.

Glenn next argues that currency seized from the yellow Silverado should be suppressed because the search warrant for the premises did not encompass the vehicle and the use of a dog sniff was an unconstitutional search, rendering the search of the vehicle unconstitutional as well. [Doc. 111 at 8-11.] The government responds that the vehicle was included within the scope of the warrant because the vehicle was located within the curtilage of the trailer. [Doc. 122 at 9-11.] The government also argues that even if the Silverado were outside the scope of the warrant, the search was nevertheless lawful under the automobile exception to the

---

[1] In any event, as Glenn properly concedes, the law in this Circuit is that identity information, even if unconstitutionally seized, is not suppressible under the exclusionary rule. [*See* Doc. 111 at 7.] Citing authority from other circuits, Glenn argues that a more "discerning analysis" compels a different outcome; however, this Court is bound to apply existing precedent, which "hold[s] that the exclusionary rule does not apply to evidence to establish the defendant's identity in a criminal prosecution." *United States v. Farias-Gonzalez*, 556 F.3d 1181, 1189 (11th Cir. 2009).

8

warrant requirement. [*Id.* at 11-12.] For the reasons that follow, the Court is persuaded that the search of the Silverado was lawful under the automobile exception; thus, the Court does not address whether the warrant itself authorized a search of the vehicle.

Under the automobile exception to the warrant requirement, law enforcement may conduct a warrantless search of a vehicle if (1) it is readily mobile and (2) law enforcement has probable cause for the search. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). A vehicle is "readily mobile" if it is operational; the search of a vehicle need not occur contemporaneously with its lawful seizure. *Id.* (citing *United States v. Johns*, 469 U.S. 478 (1985)). Probable cause exists for a search where, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle. *Id.*

Here, there is no dispute that the Silverado was operational and therefore readily mobile, as Glenn was stopped while driving the vehicle on public streets in Atlanta and he drove it to and from the area behind Muffler City. Likewise, probable cause existed to believe that the vehicle contained contraband or evidence of a crime because Diesel gave a positive alert to the rear of the Silverado. *See*

*United States v. Tamari*, 454 F.3d 1259, 1264-65 (11th Cir. 2006) (recognizing that the Circuit has "long recognized that 'probable cause arises when a drug-trained canine alerts to drugs.'" (quoting *United States v. Banks*, 3 F.3d 399, 402 (11th Cir. 1993)).

Glenn raises several arguments that the search of the Silverado was unlawful; however, none has merit. He argues first that "the entirety of the government's interactions in the case were with Mr. Louis" and that Glenn was never observed entering or leaving the trailer. [Doc. 111 at 8.] Those facts are immaterial because Diesel alerted to the Silverado, which, under binding precedent, was sufficient to establish probable cause. *See Tamari*, 454 F.3d at 1264-65.

Glenn next argues that Louis's statement during his interview was inherently unreliable because he had a motivation to point the finger at someone else and curry favor with the arresting officers. [Doc. 111 at 8-9.] The Court disagrees for two reasons. First, as just discussed, Diesel alerted to the truck, which was sufficient to establish probable cause to search the Silverado. Second, law enforcement had information that corroborated Louis's statement. Agents knew through their investigation that Louis purchased drugs at a trailer behind Muffler City, and during

the interview, agents observed a yellow Silverado at the location, corroborating his description of his source's vehicle.[2]

Finally, Glenn argues that the search was unconstitutional because law enforcement knew the Silverado was within a fenced-in commercial premises at the time that they applied for a search warrant, and yet they did not include the vehicle in the warrant. [Doc. 111 at 9-10.] Glenn goes on to argue that law enforcement could not constitutionally use a K-9 to conduct a sniff around the vehicle because the vehicle was in a protected place, akin to the curtilage of a residence. [*Id.* at 10-11.] The Court disagrees. Glenn correctly points out that the automobile exception applies only when law enforcement has a lawful right to access the vehicle. *See Collins v. Virginia*, 138 S. Ct. 1663, 1672 (2018) ("[A]n officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception."). The problem for Glenn, however, is that law enforcement was lawfully present in the area around the trailer at the time Diesel

---

[2] The reliability of Louis's statements to law enforcement actually bears more directly on the issue of whether there was reasonable suspicion to stop the Silverado. As just discussed, law enforcement corroborated Louis's statements through their own observations, thus mitigating the risk that he was being untruthful during his post-arrest interview.

was deployed because the Court had issued a warrant authorizing a search of the trailer.

Citing *Florida v. Jardines*, 569 U.S. 1 (2013), Glenn analogizes a canine sniff in the curtilage of a residence to the sniff of the Silverado in this case. *Jardines* is inapposite. In that case, the Supreme Court held that an investigative dog sniff on the porch of the defendant's residence constituted a physical intrusion onto the defendant's property and was therefore a search under the Fourth Amendment. *Jardines*, 569 U.S. at 6-10. The case hinged on a property-rights analysis, which when applied to the case at bar, shows that *Jardines* is inapposite. First, Glenn has not come forward with any evidence suggesting that he had possessory interest in the area where his truck was located at the time of the search. For example, there is no evidence suggesting that Glenn (or anyone else) resided at the location, nor is there any indication that he had any ownership interest in the property or business located there. Second, and more fundamentally, at the time Diesel was deployed, law enforcement already had probable cause to believe that evidence of a crime would be found at the trailer. This is in stark contrast to the search in *Jardines*, where the police entered the curtilage of the defendant's residence without probable cause and instead used the dog sniff was to develop

probable cause. *See id.* at 3. In the case at bar, the agents had probable cause to believe criminal activity—namely drug trafficking—was afoot at the location, and specifically within the trailer, and, indeed, had obtained a warrant to search the trailer before Diesel was deployed. Thus, even if the dog sniff in this case could be analogized to a sniff of the curtilage of a residence, the dog sniff and the follow-on search did not violate the Fourth Amendment because law enforcement had lawful access to the Silverado.[3]

In sum, the Court finds that the search of the Silverado was lawful under the automobile exception, and that the currency seized from the truck should not be suppressed.

## III.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Glenn's Motion to Suppress Evidence [Doc. 29] be **DENIED**.

---

[3] The government argues that law enforcement lawfully detained Glenn for approximately 20 minutes outside the trailer while waiting for the search warrant to be issued. [Doc. 122 at 7-8.] It does not appear that Glenn made any statements or that law enforcement seized any evidence from him during that period. Though Glenn argues that his detention (or arrest) was unlawful, his argument seems to be predicated on the purported illegality of the traffic stop, which, as discussed above, is without merit.

I have now addressed all referred pretrial matters relating to Glenn and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.[4]

IT IS SO RECOMMENDED this 17th day of December 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

---

[4] Two of Glenn's pretrial motions—his motion to suppress statements [Doc. 28] and his motion to sever [Doc. 30]—have been deferred to the District Judge. [*See* Doc. 57.]